BYONS, Judge,
after stating the case, delivered the resolution of the Court to the following effect:
In the present case, the defendant might, with safety, perhaps, have demurred to the plaintiff’s bill. Por, although it charges, that the bills of exchange were taken upon the credit of Blane, yet, that is inconsistent with the other facts stated in it; such as the requisition that the bills should be endorsed by Patten and Dalrymple, and, when that could not be obtained, the taking of an assignment of the bills of lading. These circumstances prove, that the bills were neither drawn, nor taken upon the credit of Blane, but that the plaintiff looked elsewhere for security. Therefore, upon his own shewing, it is probable, that the bill could not have withstood a demurrer.
Be that as it may, however, the case is clearly, in favour of the defendant, upon the testimony; for the plaintiff does not prove, that he ever saw, or heard of Hunter’s powers before he sold the corn to him. But, if he had, those powers did not au-thorise Hunter to draw the bills in question : Por, it does not appear that the contract was upon the account of Blane ; so far from it, his name is not even mentioned in the agreement, but the stipulation is for bills on Bondon, generally, to be endorsed by Patten and Dalrymple, without mentioning on whom they were to be drawn: A circumstance, which plainly shews, that Blane was not considered as the person on whose account the contract *was made; otherwise, it is not conceivable, why his name was omitted.
This, however, is not all. There are other circumstances which have considerable weight in determining, that it was a transaction between Hunter and the plaintiff, upon the credit of Hunter only. Por, it appears that, when Patten & Dalrymple refused to endorse, the plaintiff had it in contemplation to stop the delivery of the corn, until the bill of lading was assigned to him; which certainly would not have happened, had he relied upon the credit of Blane. Besides, that charge is exploded by other circumstances; for, in his letter of the 23d of April, 1790, he intimates, that the bills of others, endorsed by Hunter, would be received; which shews, that his confidence was in Hunter himself: And, therefore, after the bills were returned protested, he is found enquiring how he could secure himself, as Hunter’s affairs were deranged.
These circumstances plainly prove, that the credit was not given to Blane, but to Hunter: and that the plaintiff relied on other securities for indemnity, in case his confidence in Hunter should turn out to have been misplaced.
But the case of Hooe &c. v. Oxley &c., 1 Wash. 19, is relied upon by the counsel for the appellee, as establishing Blane’s responsibility. That case carried the principle far enough, and we are not disposed to push it any further. It is sufficient, therefore, to remark, that the analogy between the two cases is not so great, as the counsel supposes; for, there, the correspondence held out an idea, that Ponsonby’s bills would be honored to any extent; whereas, nothing of that kind appears in *492 the present case: Of course, the authority of that case is not so decisive, as the counsel for the appellee represents.
The general rule is, that to charge the principal, the agency must be proved to be universal, or the power must .be explicitly given. For, if the *power is limited to a particular object, it is a mere relation between merchant and factor; and the latter must act within the pale of his authority, or the principal is not bound. Hopkins v. Blane, 1 Call 361. But. here, the agency is not pretended to be universal, and the power was limited to a particular object, which not being attended to, the correspondent could create no responsibility in the principal.
A doctrine, contrary to this, would be ruinous to commerce. For, then, if a merchant, in one country, ordered goods from another, he would be liable to the manufacturers and shop-keepers, who furnished them, although he had no communication with them, and there was no confidence existing, or intended to exist between them and him; his engagement being confined to his own correspondent personally, without the least thought of extending it further.
Upon the whole, the transactions between the plaintiff and Hunter appear to have been of a private nature; and founded on the credit of the latter only. Of course, there is no ground for charging Blane; and, therefore, the decree is to be reversed, and the bill dismissed with costs.